**In the Matter of NINE APPLICATIONS FOR APPOINTMENT OF COUNSEL IN TITLE VII PROCEEDINGS.**

**COMPLAINT OF Roosevelt Stephen WHITE.**

**COMPLAINT OF Erbert LOCKLEAR.**

**COMPLAINT OF Mrs. Ruth THRASH.**

**COMPLAINT OF Square COBB.**

**COMPLAINT OF Laura M. KELLY.**

**COMPLAINT OF Bill MERRIWEATHER.**

**COMPLAINT OF Margaret Jackson WEST.**

**COMPLAINT OF Marcus L. LAWSON.**

**COMPLAINT OF Joseph M. POWELL.**

**No. CA 79–6–08645.**

United States District Court,
N. D. Alabama, S. D.

Aug. 10, 1979.

Roosevelt White, pro se.

Erbert Locklear, pro se.

Mrs. Ruth Thrash, pro se.

Square Cobb, pro se.

Laura M. Kelly, pro se.

Bill Merriweather, pro se.

Margaret Jackson West, pro se.

Marcus L. Lawson, pro se.

Joseph M. Powell, pro se.

## MEMORANDUM OPINION

GUIN, District Judge.

Nine complainants have applied to this court for appointment of counsel. All seek

gratuitous legal representation as plaintiffs in civil suits brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* One provision of that Act, 42 U.S.C. § 2000e–5(f)(1), allows an indigent complainant to apply, "and in such circumstances as the court may deem just, the court may appoint an attorney for such complainant . . . ." Without determining the merits of the claim of any applicant, nor relying on the Equal Employment Opportunity Commission determination thereof, the court is compelled to deny each and every application. No other conclusion could be reached under the thirteenth amendment of the United States Constitution. It is plain that inasmuch as Section 2000e–5(f)(1) allows for the creation of an involuntary servitude between attorney and complainant, it is unconstitutional and void.

The threshold question faced in making this decision is whether, by providing that the court "may appoint" counsel, the Act enables the court to place the attorney under a compulsion to represent the complainant. While in private practice the court came to recognize the pressure, if not coercion, levied upon an attorney by any suggestion from the bench. A member of the bar is hard pressed to refuse to cooperate with the courts before which he or she practices, whether given any volition in the matter or not. Furthermore, in civil cases the district bench is elsewhere accorded only the power to "request" an attorney to represent a party unable to employ counsel. 28 U.S.C. § 1915(d). Reference to the definitions of these words substantiates the position of this court, that Section 2000e–5(f)(1) would have the district courts command attorneys to advocate causes irrespective of their will. To "request" is defined as "to ask . . . to do something." By contrast, to "appoint" contemplates "to assign, designate, or set apart by authority." Webster's Third New International Dictionary. The difference in import between these terms is much the same as that between a question and an answer.

The court has investigated the legislative history of the Act. The intent of Congress was to grant the district courts the power to direct an attorney to represent a complainant, whether voluntarily or not. So much is reflected in the Senate's rejection of Senator Ervin's proposed amendments Nos. 876 and 894, which would have inserted the modification, "with the consent of such attorney." 110 Cong.Rec. 14201 (1964). The court concludes that the provision for appointment of counsel is and was intended to be compulsory upon the attorney named.

It is a fundamental concept that compulsory rendition of service creates an involuntary servitude:

> It would be an invasion of one's natural liberty to compel him to work for or to remain in the personal service of another. One who is placed under such constraint is in a condition of involuntary servitude, —a condition which the supreme law of the land declares shall not exist within the United States, or in any place subject to their jurisdiction.

*Arthur v. Oakes*, 63 F. 310 (7th Cir. 1894). Plainly the attorney who is coerced into representing a Title VII complainant is placed into involuntary servitude, in violation of the thirteenth amendment to the United States Constitution.

The amendment provides that:

> Neither slavery *nor involuntary servitude*, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction. [Emphasis added.]

It was enacted during troubled times, but its framers never foresaw protecting only a select few. Both proponents and critics envisioned a broader measure, one to secure the liberty of all persons. *See generally*, Congressional Globe, 38th Congress, 1st Session (1864). The congressmen who fathered the instrument were fully cognizant of its effect. *See generally*, Congressional Globe, 38th Congress, 2d Session (1865). The courts have since given the amendment their own interpretation of its breadth:

> While the immediate concern was with African slavery, the Amendment was not

limited to that. It was a charter of universal civil freedom for all persons, of whatever race, color, or estate, under the flag.

The words involuntary servitude have a "larger meaning than slavery." . . . The plain intention was to abolish slavery of whatever name and form and all its badges and incidents; to render impossible any state of bondage; to make labor free, by prohibiting that control by which the personal service of one man is disposed of or coerced for another's benefit, which is the essence of involuntary servitude.

*Bailey v. Alabama*, 219 U.S. 219, 241, 31 S.Ct. 145, 151, 55 L.Ed. 191 (1911).

■ The purpose "was not merely to end slavery but to maintain a system of completely free and voluntary labor throughout the United States." *Pollock v. Williams*, 322 U.S. 4, 17, 64 S.Ct. 792, 799, 88 L.Ed. 1095 (1944). Commanding an attorney to represent a claimant under Title VII thus transgresses the letter of the amendment.

In the course of its deliberation the court has considered other instances in which an attorney-client relationship is artificially created by the courts. The most common occasion for a court to nominate counsel obtains in the defense of the criminally accused. Less often, the federal courts will grant a litigant leave to proceed *in forma pauperis* and *request* legal representation. For various reasons, these are distinguishable. They do not persuade the court of the validity of Section 2000e–5(f)(1).

Special dispensations are made to the accused in our system of criminal justice, so that it shall remain fair, and so as to protect the life and liberty of the defendant. Under the sixth amendment, the Constitution conveys certain rights, including legal representation. "In all criminal prosecutions, the accused shall enjoy the right . . to have the Assistance of Counsel for his defence." The courts of this country have long been committed to the concept of adequate legal assistance for the criminally accused, regardless of financial circumstances. The law has been evolving through a series of decisions holding that the sixth amendment requires that an accused be afforded the right to counsel, and by implication that an attorney be appointed to represent any criminal defendant unable to afford one. This was recognized first in capital offenses, *Powell v. Alabama*, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932), and then in federally-charged crimes, *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). As the spirit of incorporation spread, the right to counsel was held to be attendant upon any defendant accused of commission of a felony, federal or state. *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). Finally, it developed that no one could be imprisoned by any court for any offense unless represented by counsel at trial. *Argersinger v. Hamlin*, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972). The right adheres after charges have been brought, and proceedings formally initiated. *Brewer v. Williams*, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424, rehearing denied 431 U.S. 925, 97 S.Ct. 2200, 53 L.Ed.2d 240 (1977). It is retained through appeals of right. *Douglas v. California*, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963), rehearing denied 373 U.S. 905, 83 S.Ct. 1288, 10 L.Ed.2d 200 (1963).

■ In accepting his office, furthermore, the attorney undertakes a duty commensurate with that privilege. He assumes the responsibility of protecting the defenseless or oppressed, as recognized by many states' statutes. *See*, for example, Code of Alabama 1975, §§ 34–3–20(7) and 15–12–21(a). This is a duty owed the state, of the type the courts have excepted from the effect of the thirteenth amendment. *Butler v. Perry*, 240 U.S. 328, 36 S.Ct. 258, 60 L.Ed. 672 (1916). The court also takes judicial notice of the enthusiastic response of members of the bar to its own *voluntary* system for appointing counsel to represent indigent criminal defendants. This service is cheerfully and vigorously performed by the bar of this court, recognizing that fundamental constitutional rights are at stake.

■ The members of the bar, in representing indigent criminal defendants, and

the courts, in rendering their decisions calling for appointed criminal counsel, show a common concern for the protection of the liberty of the accused. It is not for some pecuniary interest that counsel is provided. Indeed, the Supreme Court has lately limited the right to counsel to only those cases in which there is an actual—not merely latent—threat of imprisonment. *Scott v. Illinois,* 440 U.S. 367, 99 S.Ct. 1158, 59 L.Ed.2d 383 (1979). Implicitly, the property interest of a claimant under Title VII does not rise to the level of the interest in safeguarding the liberty of the criminal defendant.

It is elsewhere provided in the United States Code that the court has power to seek counsel for indigent litigants who petition to proceed *in forma pauperis.* Under 28 U.S.C. § 1915(d) it is stated that:

> The court may *request* an attorney to represent any such person unable to employ counsel and may dismiss the case if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious. [Emphasis added.]

It is roundly agreed by the courts that such requests are discretionary with the courts and should only be granted in exceptional cases. *See Alexander v. Ramsey,* 539 F.2d 25 (9th Cir. 1976); *Cook v. Bounds,* 518 F.2d 779 (4th Cir. 1975); *Ehrlich v. Van Epps,* 428 F.2d 363 (7th Cir. 1970); *Bethea v. Crouse,* 417 F.2d 504 (10th Cir. 1969); *Schack v. State of Florida,* 391 F.2d 593 (5th Cir. 1968), cert. denied 392 U.S. 916, 88 S.Ct. 2080, 20 L.Ed.2d 1376; and *Brasier v. Jeary,* 256 F.2d 474 (8th Cir. 1958), cert. denied 358 U.S. 867, 79 S.Ct. 97, 3 L.Ed.2d 99, rehearing denied 358 U.S. 923, 79 S.Ct. 286, 3 L.Ed.2d 242. It has been said that there is no constitutional right for appointed counsel in a civil case. *Peterson v. Nadler,* 452 F.2d 754 (8th Cir. 1971); *Securities and Exchange Commission v. Alan F. Hughes, Inc.,* 481 F.2d 401 (2d Cir. 1973), cert. denied 414 U.S. 1092, 94 S.Ct. 722, 38 L.Ed.2d 549. The volition of the attorney sought by the court to represent an indigent in a proceeding *in forma pauperis* is explicit in the statute. It is not said that the court may "require" or even "appoint," but only that

it may "request." And courts have held that under Section 1915(d) the appointment cannot be compelled, as the language would indicate. *Reid v. Charney,* 235 F.2d 47 (6th Cir. 1956); *Moss v. Thomas,* 299 F.2d 729 (6th Cir. 1962); *Rhodes v. Houston,* 258 F.Supp. 546 (D.Neb.1966), affirmed 418 F.2d 1309 (8th Cir. 1969), cert. denied 397 U.S. 1049, 90 S.Ct. 1382, 25 L.Ed.2d 662. The skepticism of its power under Section 1915(d) to command the labor of attorneys, even in a criminal case, voiced by the District Court of California in *United States v. Leser,* 233 F.Supp. 535 (S.D.Cal.1964), remanded on other grounds 335 F.2d 832 (9th Cir. 1964), cert. denied 379 U.S. 983, 85 S.Ct. 692, 13 L.Ed.2d 574, rehearing denied 380 U.S. 928, 85 S.Ct. 910, 13 L.Ed.2d 817, bears repeating:

> [The court] has no more power to compel a member of the Bar of the State of California to do the tremendous amount of work and put in the tremendous amount of time it would require to conscientiously examine the files and records in this case, and represent the defendants on appeal, and thus compel involuntary servitude by a lawyer to convicted criminals, than I have to make an order compelling these defendants, had they not been convicted, to pick cotton for a private individual.

233 F.Supp. at 538. Similar restraint on the authority of the courts to appoint counsel under Title VII is lacking, utterly in disregard of the constitutional protection afforded all to labor in freedom. Section 1915(d) provides the proper measure of restraint. It is also an alternative method of giving legal representation to indigent claimants under Title VII where counsel is due, and guarantees that those services will be voluntarily rendered.

Yet the power of the court to appoint (and thus compel) an attorney for a claimant under Title VII has been assumed. In *Caston v. Sears, Roebuck & Co., Hattiesburg, Miss.,* 556 F.2d 1305 (5th Cir. 1977), the power was deemed discretionary with the court and guidelines were established for the exercise of that discretion. The

constitutional question, however, was not raised for the Fifth Circuit's consideration, so it was not addressed in the court's opinion.

Serious weaknesses arise from within the *Caston* guidelines, moreover, which heighten this court's doubt of the constitutionality of power of appointment under § 2000e–5(f)(1). The court is called upon to make a premature scrutiny of the action, necessitating its prejudgment on the merits. This possibly would prejudice the ensuing bench trial of cases deemed worthy of appointing counsel to bring them. The *Caston* concept is a measure of some reason; these cases ought to be screened. But the attorney traditionally is trained to assess the cases as they are brought to him. Before actions are filed, the attorney should dissuade frivolous litigants. Indeed, he is ethically so bound. *See generally*, Code of Professional Responsibility of the Alabama State Bar, Ethical Consideration 2–30, and Disciplinary Rule 2–110.[1] This is not the role for the judge; to attempt to make it so incurs judicial waste and, possibly, a lack of procedural due process. Meritorious claims will find advocates, as discussed below.

It seems probable, furthermore, that the statute promotes frivolous litigation. Were a court to eschew the premature scrutiny discussed above, and to make the appointment anyway, there is no provision for an appointed attorney to refuse to litigate a case that proves meritless. Traditionally, this option is granted to the attorney, and his abandonment is demanded at times. But it is not foreseen by the statute. In fact, the attorney remains shackled to the cause.

This court also objects to the judicial intrusion upon the attorney-client relationship exacted by Section 2000e–5(f)(1). The statute allows to be forced that which by its very nature cannot be forced, the fiduciary relationship between the client and his attorney. Trust and confidence are imperative therein. And, while an attorney is ethically bound to give any client his all, the amount of trust and confidence to be found in a compelled relationship is questionable at best.

Not only is Section 2000e–5(f)(1) in derogation of the Constitution, but it is also a needless measure. No effective advocacy of the civil rights of claimants will be lost by its expungement. As noted in *Caston, supra*, there is a great attractiveness about well-taken actions under Title VII, one which might serve to explain, at least in part, the proliferation of equal employment cases voluntarily brought by the bar before this court. It is found under Section 2000e–5(k), allowing reasonable attorney's fees to be awarded to prevailing parties.

For this reason alone, Title VII actions draw representation where there is any color of merit to be found in the claim. These awards, while discretionary, are a common practice with this court. Fees have even been awarded in the interim during protracted litigation. *James v. Stockham Valves and Fittings Co.*, 559 F.2d 310 (5th Cir. 1977). Recalling once again the traditional role of the attorney, moreover, contingent fee arrangements are commonplace, where the attorney manifests his belief in his client's cause, putting his money where his mouth is, as it were.

This district has an active civil rights bar, well known to the public, eager to take on new causes. That a would-be plaintiff has been unable to find counsel should, in fact, suggest the spuriousness of his claim. That an attorney should be compelled to take on a Title VII claim by court appointment under Section 2000e–5(f)(1) is patently unconstitutional, counterproductive judicially, and needless in practice. This court therefore finds itself compelled to manumission of the bar from the strictures of the statute in question. It hereby finds that portion of

---

1. It should be noted that the interposition of the court, and acceptance of such appointment in accordance with Ethical Consideration 2–29, could place the attorney in the position of violating those rules. EC 2–29 states that ". . . a lawyer . . . appointed by a court . . . should not seek to be excused from undertaking the representation except for compelling reasons. Compelling reasons do not include . . . the belief of the lawyer regarding the merits of the civil case."

42 U.S.C. § 2000e–5(f)(1) which would authorize the appointment of counsel to be unconstitutional and void. No such power can constitutionally be given this court.

It is important to distinguish the constitutional power to authorize or require appointment of counsel in criminal and in civil cases. In criminal cases, the accused has a constitutional right to a defense, even if he is guilty. This right is fundamental and sacred and it can be truthfully said that, as officers of the court, all lawyers accept their licenses with the implicit obligation to accept criminal defense appointments. This rationale does not, on the other hand, apply to appointments to represent civil plaintiffs. The restraints known to the law on stirring up or encouraging litigation are many and well known. Not every would-be plaintiff is entitled as a matter of right to an attorney to present his possibly frivolous claim in court. The right to sue is neither so fundamental nor so sacred as the right to be defended against an accusation of crime. The criminal defendant has a constitutional right to be defended even if he is totally in the wrong. It would defy both common sense and the Constitution to hold that a civil plaintiff has an equal right to coerced representation even if he is totally in the wrong.

A separate order in conformity herewith is being contemporaneously entered.