In the Matter of Five Applications for
Appointment of Counsel Title VII
Proceedings.

Roosevelt Stephen WHITE,
Plaintiff-Appellant,

v.

UNITED STATES PIPE & FOUNDRY
CO., et al., Defendants-Appellees,

Marcus L. LAWSON, Plaintiff-Appellant,

v.

PULLMAN–STANDARD,
Defendant-Appellee,

Laura M. KELLY, Plaintiff-Appellant,

v.

ZAYRE DEPARTMENT STORE,
Defendant-Appellee,

Bill MERRIWEATHER,
Plaintiff-Appellant,

v.

OVERNIGHT TRANSFER COMPANY,
Defendant-Appellee,

Erbert LOCKLEAR, Plaintiff-Appellant,

v.

REVERE COPPER & BRASS, INC.,
Defendant-Appellee.

No. 79–3863.

United States Court of Appeals,
Fifth Circuit.
Unit B

May 29, 1981.

Barry Goldstein, NAACP, Legal Defense Fund, Sara Ann Determan, William T. Toregerson, Washington, D. C., Demetrius C. Newton, Birmingham, Ala., for all defendants except Lawson.

William F. Gardner, R. Boyd Miller, Birmingham, Ala., for Revere Copper & Brass, Inc.

C. V. Stelzenmuller, Birmingham, Ala., for Pullman-Standard, Jim Walters Resources, Overnight Trans. Co., Zayre Dept. Stores and U. S. Pipe & Foundry Co.

Arturo L. Barrera, Washington, D. C., for Hispanic Bar Ass'n, amicus curiae.

Philip B. Sklover, E.E.O.C., Washington, D. C., for the E.E.O.C., amicus curiae.

Mark L. Gross, Jessica Dunsay Silver, Appellate Section, Civil Rights Div., Dept. of Justice, Washington, D. C., for the U. S., amicus curiae.

Before KRAVITCH and THOMAS A. CLARK, Circuit Judges, and LYNNE *, District Judge.

THOMAS A. CLARK, Circuit Judge:

This is an appeal from denial of petitions for appointment of counsel under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Appellants are complainants who, having complied with all administrative preconditions to suit and received notice of their right to sue under the Act, would bring suit against their former employers for allegedly unlawful employment discrimination. They individually petitioned the district court for appointment of counsel to represent them, presenting in their applications a variety of circumstances reflecting their own efforts to secure counsel.[1] Finding nine such petitions pending on his docket, the district court consolidated them "for the limited purpose of the applications for appointment of counsel and all attendant proceedings." R.1. The district court denied all applications on the ground that § 706(f)(1) of the Act, 42 U.S.C. § 2000e–5(f)(1), permitted the appointment of counsel unwilling to serve in contravention of the thirteenth amendment's prohibition against involuntary servitude. 475 F.Supp. 87. Five applicants appeal. We reverse.

We hold that in reaching and in deciding the constitutional issue the district court abused its discretion in the following respects: In the first place, no party to these proceedings has standing to raise the thirteenth amendment question, and the court cannot *sua sponte* raise the question. Additionally, by not undertaking to exercise his discretionary power of appointment in light of guidelines previously announced by this court, the district court violated a well established principle of constitutional interpretation, that deciding constitutional questions should be avoided if the merits of a case may be settled on nonconstitutional grounds.

Section 706(f)(1) provides in part that, "in such circumstances as the court may deem just," a district court "may appoint" counsel to represent complainants who bring their Title VII claims from the EEOC to the district court.[2] Ever since *Caston v. Sears,*

* District Judge of the Northern District of Alabama, sitting by designation.

1. Although in no way conclusive of the factual issues to be resolved on remand, petitioners' applications, which they filled out themselves on a form supplied by the district court clerk's office, recited the following efforts to obtain counsel:

(1) Appellant White stated that, four days before petitioning the district court, he had been turned down by one attorney, because there wasn't "any money in it," and referred to another. R.7. Instead he sought the assistance of the district court.

(2) Appellant Locklear also was turned down by a lawyer, because of the "cost of litigation," before turning to the district court. R.23.

(3) According to Appellant Merriweather, the lawyer he approached told him that he would need about two thousand dollars before taking on his case. He went next to the district court. R.35.

(4) Appellant Kelly stated that she did not consult an attorney before petitioning the district court. R.42.

(5) Appellant Lawson likewise sought out the district court before consulting an attorney. R.60.

2. The second from the last sentence of § 706(f)(1) reads as follows: "Upon application by the complainant and in such circumstances as the court may deem just, the court may appoint an attorney for such complainant and may authorize the commencement of the action without the payment of fees, costs, or security." 42 U.S.C. § 2000e–5(f)(1).

*Roebuck and Co., Hattiesburg, Miss.,* 556 F.2d 1305 (5th Cir. 1977), district courts in this circuit have been under direction to evaluate applications for appointment of counsel under § 706 in light of three general considerations. These factors are (1) the merits of the complainant's claims of discrimination, (2) the efforts taken by the complainant to obtain counsel on his or her own, and (3) a complainant's financial ability to retain counsel. *Id.,* 1308–09. No one factor is conclusive, and those given "are merely suggestive rather than exhaustive." *Id.,* 1308. So long as a district court confines itself to an evaluation of these considerations, or similar factors particularly relevant under the facts of a given application, a district court's action in denying appointed counsel will be subject to review only for an abuse of discretion. At all events, "[d]istrict courts should be sensitive to the problems faced by *pro se* litigants and innovative in their responses to them." *Id.,* 1310.

The court below made no effort to exercise its discretion under *Caston.* Instead, finding that the statute was capable of an application that raises an arguable issue under the thirteenth amendment,[3] the district court concluded that it had no constitutional discretion under the Act at all. It reached its decision on its own motion, without notice or opportunity to be heard by any of the petitioners, who as yet were proceeding without benefit of counsel. As a measure of its "sensitiv[ity] to the problems faced by *pro se* litigants" and its innovation in response thereto, *Caston,* 556 F.2d at 1310, the district court made no effort to exercise its discretion under *Caston* in light of the constitutional shortcomings it found in the authority conferred by § 706, nor did it attempt to seek voluntary representation under 28 U.S.C. § 1915(d).[4]

### Standing

■ "Generalizations about standing to sue" may be "largely worthless as such," *Association of Data Processing Service Organizations, Inc. v. Camp,* 397 U.S. 150, 151, 90 S.Ct. 827, 829, 25 L.Ed.2d 184 (1970), but there is vitality to the notion that constitutional rights may be asserted only by those whose rights are at stake.

[*Data Processing*] announced a two-part test for standing. Standing exists if "the plaintiff alleges that the challenged action has caused him injury in fact, economic or otherwise," [397 U.S. at 152, 90 S.Ct. at 829,] and if "the interest sought to be protected by the complainant is

---

**3.** We note in passing that this circuit, along with others, has rejected attacks on noncompensable appointments as violative of the fifth amendment's taking clause on a rationale that largely undercuts any theory proceeding under the thirteenth amendment. In *Dolan v. United States,* 351 F.2d 671 (5th Cir. 1965) (per curiam), we held that

[a]n applicant for admission to practice law may justly be deemed to be aware of the traditions of the profession which he is joining, and to know that one of these traditions is that a lawyer is an officer of the court obligated to represent indigents for little or no compensation upon court order.

351 F.2d at 672, *quoting from United States v. Dillon,* 346 F.2d 633, 635 (9th Cir. 1965). *Accord: Tyler v. Lark,* 472 F.2d 1077 (8th Cir. 1973) (civil appointment: § 1983 complaint). If the premise of these opinions is correct, then the proper frame of reference for evaluating any "servitude" imposed by judicial appointment, for purposes of determining whether the appointment is *"involuntary* servitude" within the meaning of the thirteenth amendment, cannot be confined solely to the circumstances of a given appointment, but must take account of the obligations assumed by the lawyer toward the courts and that of the Bar toward the public. Highly particular circumstances might be relevant to a showing that a court has abused its appointment discretion in taking all of a lawyer's available services for such appointments. But a nonconstitutional basis for invalidating such appointments is apparent, as an abuse of discretion, and this can hardly support the class-wide relief resulting from the district court's invalidation of the statute on its face. In short, the posture of the Bar before the courts and before the public makes it highly improbable that a thirteenth amendment attack on § 706's appointment power, on its *face,* can ever be sustained, and as for the law as it is applied, thirteenth amendment concerns are invariably subsumed in nonconstitutional considerations.

**4.** See note 9, *infra.* The district court did explain that the applicants might appeal his denial of their applications, and, given a justiciable case or controversy, our appellate jurisdiction is established. *Caston,* 556 F.2d at 1307–08.

arguably within the zone of interest to be protected or regulated by the statute or constitutional guarantee in question." [397 U.S. at 153, 90 S.Ct. at 830.]

Wright, *Federal Courts* (3d ed.) § 13.

That a lawyer's claims of involuntary servitude, upon appointment against his or her wishes to represent a Title VII complainant, *might* satisfy the "arguably within the zone of interest" standard, does not relieve some party before this court of the obligation to demonstrate some "injury in fact, economic or otherwise." More so than the "zone of interests" inquiry, the "injury in fact" element of standing lies at the core of article III concepts of the limits of the exercise of the federal judicial power. *Cf. Data Processing,* 397 U.S. at 151–52, 90 S.Ct. at 829, *with* Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction § 3531, *and* Tribe, *American Constitutional Law,* §§ 3–17, 18.

We unhesitatingly conclude that the district court itself lacks standing to assert whatever rights members of the federal Bar might enjoy under the thirteenth amendment.[5] As for the lawyers in this appeal, they fail to demonstrate "injury in fact." At the risk of invoking another generalization, they do not allege "such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of the issues upon which the court so largely depends for illumination of difficult constitutional questions." *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962). *See Luna v. International Association of Machinists and Aerospace Workers*

Local No. 36, 614 F.2d 529, 531 (5th Cir. 1980).[6]

### Avoidance of Constitutional Issues

It ought to go without saying, but apparently the circumstances call for a reminder, that the federal courts should not reach a constitutional question, especially one concerning the validity of an act of Congress, if the merits of the case may be settled on nonconstitutional grounds. *See Ashwander v. Tennessee Valley Authority,* 297 U.S. 288, 341–56, 56 S.Ct. 466, 480–87, 80 L.Ed. 688 (1936) (Brandeis, J., concurring). Proceeding on the assumption of § 706's validity, the district court might have avoided the necessity of invoking the power of appointment by concluding, under the circumstances relevant to a given application, that appointment of counsel would not be "just," both within the meaning of § 706 and as construed by *Caston.*

In addition, an appointment, if the circumstances called for one, might not be "involuntary" at all in that the district court might simply have found a lawyer willing to take the case in light of Congress' complementary incentives to private attorney general suits under Title VII, such as the possibility of attorney fees under § 706(k), 42 U.S.C. § 2000e–5(k). The clear thrust of the appointment power was to enlist the aid of the district courts in finding lawyers who would take such cases, whether they (courts and lawyers alike) wanted to engage in such matters or not, the assumption being that Title VII complainants cannot all be expected to find such assistance on their own.[7] If the exer-

---

5. Such concerns as the district court voiced for the discharge of its other responsibilities as a result of the power conferred upon it by § 706 simply bear no relation to the constitutional ground upon which he invalidated the appointment provision. *Cf.* Tribe, *supra,* §§ 3–22, 23.

6. Counsel for appellants, who are retained solely for purposes of this appeal, urge us to reach the constitutional issue, and to decide the issue in favor of § 706's validity. Counsel for the employers appear in an even more dubious posture. They are simply not in a position to assert the rights of their adversaries, and any interest they may have in staving off the bur-

dens of such future appointments as they might apprehend is simply insufficient to call into question the power of Congress under the thirteenth amendment. *Luna, supra.*

7. That a lawyer's thought processes on appointment might track those of the district court in weighing the merits of an application for appointment, in that both lawyer and judge will look (with different degrees of interest) to the likely merits of the complaint, does not render Congress' provision of a power of involuntary appointment a needless superfluity. *Cf.* 475 F.Supp. at 91. The district court's seeming

cise of a sound judicial discretion should result in the appointment of an attorney who is willing to serve, the thirteenth amendment problem is avoided altogether. If the exercise of a sound judicial discretion should result in the appointment of an attorney who is unwilling to serve, then that lawyer will be in a position to raise the thirteenth amendment issue.[8]

In summary, we conclude that no party to this appeal has standing to raise the issue of § 706's validity under the thirteenth amendment. In addition, we conclude that the district court abused its discretion in reaching any constitutional issue before attempting to conform to the guidelines laid down in *Caston*. On the strength of the former conclusion, the judgment will be vacated. On the strength of the latter conclusion, we remand and direct that the lower court proceed forthwith to schedule hearings, at the earliest date possible, at which it shall consider such evidence as is relevant in light of *Caston's* guidelines.[9]

VACATED with directions and RE-MANDED.

---

assumption, *id.*, that meritorious claims will never need the benefit of involuntary appointment, if it should come to that, is completely at odds with Congress' implicit conclusion to the contrary.

8. Whether a district court acted with sound discretion in appointing a lawyer so loathe to represent his client that he would instead challenge the appointment as involuntary servitude should be the first order of business in this court, however, before reaching any issue of Congress' power under the thirteenth amendment to authorize such an appointment.

9. We emphasize that, on remand, the district court is not to supplement the *Caston* guidelines with any considerations derived from the district court's own doubts as the constitutionality, under some circumstances, of the power of appointment conferred by § 706. Our conclusion that such issues are not as yet justiciable precludes the district court from doing indirectly what it cannot do directly. Instead the district court is to proceed in both the letter and spirit of *Caston*, and it is to consider neither the wisdom nor the constitutionality of the power Congress has conferred. Questions concerning the wisdom of the power ought to be addressed to the body that might constitutionally confer that power; questions of its constitutionality must await a justiciable controversy.