742 F.2d 515
 35 Fair Empl.Prac.Cas. 1297,
35 Empl. Prac. Dec. P 34,623
Nancy S. BRADSHAW, individually and on behalf of others who
are similarly situated, Petitioners,
v.
UNITED STATES DISTRICT COURT FOR the SOUTHERN DISTRICT OF
CALIFORNIA, Respondent,
Zoological Society of San Diego, Real Party in Interest.
 No. 83-7247.
 United States Court of Appeals,
Ninth Circuit.
 Submitted Feb. 1, 1984.*
Decided Sept. 7, 1984.
 
 Nancy S. Bradshaw, in pro per.
 Robert W. Bell, Jr., Edward M. Healey, Gray, Cary, Ames & Frye, San Diego, Cal., for Zoological Soc. of San Diego.
 Susan Elizabeth Rees, Atty., E.E.O.C., Washington, D.C., for amicus curiae.
 On Petition for Mandamus to the United States District Court for the Southern District of California.
 Before WALLACE, SKOPIL, and REINHARDT, Circuit Judges.
 SKOPIL, Circuit Judge:
 
 
 1
 Appellant Nancy Bradshaw petitions this court for a writ of mandamus compelling the district court to appoint counsel to represent her in her Title VII action against the San Diego Zoological Society ("Zoo"). We decline to issue the writ.
 
 FACTS AND PROCEEDINGS BELOW
 
 2
 Bradshaw filed a pro se sex discrimination action against the Zoo in 1975. The district court granted summary judgment in favor of the Zoo and Bradshaw appealed. This court reversed and remanded for further proceedings. See Bradshaw v. Zoological Society of San Diego, 569 F.2d 1066 (9th Cir.1978) ("Bradshaw I").
 
 
 3
 Bradshaw then filed a motion for appointment of counsel under 42 U.S.C. Sec. 2000e-5(f)(1)(B) and for leave to proceed in forma pauperis in district court. The district court denied the motion for appointment of counsel and Bradshaw appealed. A majority held that Bradshaw was appealing from a collateral order and that she satisfied the criteria for appointment of counsel. See Bradshaw v. Zoological Society of San Diego, 662 F.2d 1301 (9th Cir.1981) ("Bradshaw II"). The case was remanded to the district court for appointment of counsel and proceedings on the merits.
 
 
 4
 On March 30, 1983 the district court entered findings of fact detailing its unsuccessful attempt to appoint counsel for Bradshaw. The district court's order directs Bradshaw either to proceed pro se or to seek further relief from this court. On April 15, 1983 Bradshaw filed her petition for writ of mandamus with this court seeking to compel the district court to appoint counsel.
 
 DISCUSSION
 
 5
 This case highlights a defect in Title VII of the Civil Rights Act of 1964 ("Act"). That Act, at 42 U.S.C. Sec. 2000e-5(f)(1)(B), authorizes the district court to appoint counsel "[u]pon application by the complainant and in such circumstances as the court may deem just...." Unfortunately, Congress has not been as generous in providing compensation for counsel as it has in authorizing court appointments. Congress has never created a fund for payment of court-appointed counsel in Title VII cases. This deficiency has contributed significantly to the district court's difficulty in finding counsel willing to represent Bradshaw.
 
 
 6
 After the remand in Bradshaw II, the district court set about in search of counsel to fulfill the mandate of this court. The district court strove for over 13 months to find an attorney who would volunteer to represent Bradshaw. Twenty private attorneys were contacted by either the court or Bradshaw at the court's direction. In addition, help was solicited from the Federal Defenders of San Diego, Inc.; the Lawyers Club of San Diego; the Legal Aid Society of San Diego, Inc.; the San Diego County Bar Association and its Lawyer Reference Agency; the Southern District Lawyer Representatives to the Ninth Circuit Judicial Conference; the University of San Diego School of Law Legal Clinic; and the United States Attorney. No one would voluntarily assist in the prosecution of Bradshaw's case.
 
 
 7
 The district court outlined in its findings of fact the reasons why counsel could not be located to voluntarily assist Bradshaw. Chief among the reasons given by attorneys and organizations contacted was the lack of compensation. Besides the obvious demand on attorney time for the adequate prosecution of a complex employment discrimination case, the costs of discovery were thought prohibitive. Anyone stepping forward would have been responsible to pay for substantial discovery and other costs. The only opportunity for recovery for time and out-of-pocket expenditures would be as a prevailing party under 42 U.S.C. Sec. 2000e-5(k). Attorneys also expressed concern about jeopardizing their malpractice insurance coverage and defending against State Bar disciplinary proceedings. Furthermore, Bradshaw is apparently particularly litigious and is not reluctant to call into question the competency of attorneys who attempt to assist her.
 
 
 8
 When this case was last before us we discussed three factors which a district court must consider in exercising its discretionary power of appointment under 42 U.S.C. Sec. 2000e-5(f)(1)(B).[1] A majority held that the district court had abused its discretion because it had not considered one of the three essential factors and had been wrong as a matter of law in its evaluation of another of the three factors. Bradshaw II, 662 F.2d at 1318-20. The opinion carefully pointed out, however, that other factors besides the three specified might be relevant:
 
 
 9
 The three factors listed in the text are applicable in all cases. They are usually the only relevant factors. The record before us does not provide any basis for consideration of other factors in this case. We do not mean to suggest, however, that in other cases where the particular facts so warrant other similar factors may not be taken into account by the district courts, so long as they are treated in a manner consistent with the policy of the statutory provision.
 
 
 10
 Bradshaw II, 662 F.2d at 1318 n. 43 (emphasis added). We find that the record, as now supplemented by the additional findings of fact by the district court, reveals other factors that are properly taken into account.
 
 
 11
 The district court has not violated the mandate in Bradshaw II. The opinion directed the district court to assist Bradshaw in locating counsel who would participate willingly, never supposing that the court would be unable to secure such assistance. The district court fairly exhausted the possibilities in the community where it is located. Based on the record before us in Bradshaw II, the majority fully expected on remand that willing counsel would be found and appointed. Based on the record as it now stands, we hold that it was not an abuse of discretion, and not a violation of our intent in Bradshaw II, for the district court not to make a coercive appointment of counsel.
 
 
 12
 We reach this conclusion for several reasons. Several of the attorneys contacted by the district court suggested that issues of involuntary servitude are raised by coercive appointment.[2] Our purpose in recognizing that such issues were raised is to illustrate the degree of reluctance of members of the San Diego area bar to aid Ms. Bradshaw. When the degree of resistance is so high that attorneys would rather confront the court with questionable thirteenth amendment arguments than provide counsel for an indigent, the helpfulness of coercive appointment is subject to question. There is reason to doubt that an attorney appointed under such conditions would provide representation that would assist either the indigent or the court.
 
 
 13
 Were the lack of compensation the only reason for the bar's recalcitrance, we would be far less inclined to accept the district court's failure to make a coercive appointment. Another factor is present here which causes members of the bar concern. Bradshaw has been a litigant in numerous cases over the last ten years in municipal, superior, and federal courts. Attorneys who have been appointed to represent her interests in the past have themselves been the subject of court hearings and public exposure due to questions raised by Bradshaw about their competency and ability to represent her interests. While we have no knowledge regarding the legitimacy of Bradshaw's complaints regarding her former legal counsel, we are aware of the taint that claims of incompetence can imbue. It is understandable, if not fully excusable, that practitioners would avoid a situation which might result in their competence being questioned unfairly.
 
 
 14
 Moreover, the district court found that members of the bar were afraid of jeopardizing their malpractice insurance coverage and concerned they would be subject to state bar disciplinary proceedings. These fears apparently stem from their assessment of the merits of Bradshaw's claims, coupled with the present willingness of litigants to join attorneys with their clients as defendants in seeking redress from frivolous, meritless, or vexatious claims.[3] Prosecuting such claims can also lead to disciplinary proceedings.
 
 
 15
 The concerns addressed by the district court on remand are properly part of the decision whether to appoint counsel. Moreover, we are not prepared to say the district court came to the wrong conclusion in its consideration of these additional factors. The court made a thorough search of the San Diego legal community. The response made it apparent that any appointment would have resulted in animosity between appointed counsel and Bradshaw with little or no chance for the development of a proper attorney-client relationship. Under such circumstances, we cannot say the district court abused its discretion.
 
 
 16
 We stress that this is an extreme case. Each case is to be judged individually depending on the circumstances. We continue to have sufficient faith in the legal profession to believe that, in most cases, a diligent search by the district court will turn up willing counsel. By saying so we do not mean to suggest that coercive appointments are never proper. In some situations they will be. We only hold that this is not such a case.
 
 
 17
 Even though we hold that the actions of the district court were not improper we do not condone the response of the bar to the requests for assistance. As the Court of Appeal of South Carolina recently said,
 
 
 18
 the practice of law is a profession--not a business or skilled trade. While the elements of gain and service are present in both, the difference between a business and a profession is essentially that while the chief end of a trade or business is personal gain, the chief end of a profession is public service.
 
 
 19
 Ex parte Dibble, 279 S.C. 592, 310 S.E.2d 440, 443 (App.1983), quoting In re Jacobson, 240 S.C. 436, 448, 126 S.E.2d 346, 353 (1962). A part of the public service obligation of the bar is the performance of pro bono work.[4] That obligation runs not only to indigent litigants, but to the court, of which attorneys are officers. Failure to come forward to assist indigent litigants at the request of the court is an indication of loss of professionalism. It is also a violation of the spirit, if not the letter, of ethical considerations 2-16 and 2-26 through 2-31 of the Model Code of Professional Responsibility. It may also be a violation of section 6068 of the California Business and Professions Code.[5]
 
 
 20
 We are disappointed with the California State Bar Association. Because of the difficult issue involved in this case, we sought the assistance of the State Bar of California, requesting it to file an amicus curiae brief. For reasons unknown, the Bar Association failed to respond. We had hoped the Bar Association would take the leadership in assisting us with this sensitive problem which, in our view, should be of the highest concern to every member of the bar.
 
 
 21
 In the past it was recognized that the problem of indigent legal representation was in large part a responsibility of the bar:
 
 
 22
 [T]his representation ... [has been supplied] through the spontaneous generosity of individual lawyers, through legal aid societies, and--increasingly--through the organized efforts of the Bar. If those who stand in need of this service know of its availability and their need is in fact adequately met, the precise mechanism by which this service is provided becomes of secondary importance. It is of great importance, however, that both the impulse to render this service, and the plan for making that impulse effective, should arise within the legal profession itself.
 
 
 23
 Professional Responsibility: Report of the Joint Conference, 44 A.B.A.J. 1159, 1216 (1958) (emphasis added). Perhaps only the threat of widespread coercive appointments will rekindle these sentiments.
 
 CONCLUSION
 
 24
 The district court did not violate the mandate of Bradshaw II and did not abuse its discretion in failing to make a coercive appointment of counsel in this case. The petition is therefore denied.
 
 REINHARDT, Circuit Judge, concurring:
 
 25
 I concur in the opinion Judge Skopil has authored for the court. Because the result we reach is troublesome, as is the underlying problem, I write separately to expand upon a few points.
 
 
 26
 First, it is clear that the basis for our decision is that, as we emphasized, "this is an extreme case." The peculiar facts that underlie this case, Bradshaw III, make it apparent that our opinion is no way intended to serve as a precedent for refusals to appoint counsel in other cases. To the contrary, the standards set forth in Bradshaw II (Bradshaw v. Zoological Society of San Diego, 662 F.2d 1301 (9th Cir.1981)) remain unchanged.
 
 
 27
 Second, the factors that determine our decision are non-economic. They involve the individual litigant's past history, her relationship with her previous attorneys, and the attitude of the bar toward her (justified or unjustified) rather than the cost involved in ensuring that her case is presented properly.
 
 
 28
 Third, notwithstanding the result in the present case, we must bear in mind that unpopular and even obstreperous litigants are entitled to the full measure of their legal rights. We must be particularly careful that civil rights litigants are afforded their full rights and that neither the unpopularity of their cause nor any perceived belligerency on their part, or other unwillingness or inability to conform to the normal mode, underlies or plays any part in a failure to appoint counsel.
 
 
 29
 Fourth, although we conclude that the district judge did not abuse his discretion in this case, it is evident that there are many avenues for a district judge to explore when attempting to locate counsel willing to handle a civil rights case and many ways for a district judge to obtain an attorney's cooperation. The ingenuity of federal judges, when sufficiently motivated, is limitless and the willingness of counsel to cooperate when asked to do so by a federal judge is almost as great. Larger firms that ordinarily do not represent civil rights plaintiffs may be more than willing to handle difficult and unpopular cases or clients if requested to do so by the district court.
 
 
 30
 Fifth, as Judge Skopil's opinion forcefully points out, the performance of the California bar in this entire matter has been most disappointing. It is surprising, to say the least, that the bar has apparently not acted, on either a statewide or local level, to ensure that counsel will be available whenever necessary to represent civil rights litigants who are statutorily entitled to representation. While it may now be too late to help Ms. Bradshaw, the creation of panels of attorneys willing to undertake cases similar to hers, as well as more appealing cases, would constitute a significant step in the right direction. I would hope that the Equal Employment Opportunities Commission, which filed an amicus brief in this matter at our request and which a number of years ago helped develop panels of this type in at least one major area of California, would participate enthusiastically in such an endeavor.
 
 
 31
 Sixth, under the Civil Rights Act plaintiffs are, unless exceptional circumstances exist, entitled to the appointment of counsel whenever the three criteria set forth in Bradshaw II are met. Every effort should be made to provide counsel on a voluntary basis in such cases. However, in the rare case in which the services of a volunteer cannot be obtained, the district court must nevertheless make an appointment. The inability of the district judge to locate a volunteer does not, by itself, constitute exceptional circumstances.
 
 
 32
 Finally, I would add one point not mentioned in our opinion. The result here is regrettable. Ms. Bradshaw should have been represented by counsel from the outset of this litigation. It appears that in this case, at least, the system simply did not work properly. However, another reversal of the district court at this point would not necessarily be in anyone's best interests, including Ms. Bradshaw. Her suit alleges that she was unlawfully denied employment initially in 1969 and then again in 1971. It is long past time for the merits of her charge to be resolved. Further procedural delays (and we cannot say how many more there would be or of what duration were we to reverse once again) would be intolerable. Accordingly, proceeding to trial without an attorney may under these unique circumstances be the lesser of the evils.
 
 
 
 *
 The panel is unanimously of the opinion that oral argument is not required in this case. Fed.R.App.P. 34(a)
 
 
 [1]
 A majority held that, in all cases, the district court must consider: (1) the plaintiff's financial resources, (2) the efforts made by the plaintiff to secure counsel, and (3) whether the plaintiff's claim has merit. Bradshaw v. Zoological Society of San Diego, 662 F.2d 1301, 1318 (9th Cir.1981) ("Bradshaw II ")
 
 
 [2]
 The thirteenth amendment arguments are, in some respects, tenuous. See, e.g., Williamson v. Vardeman, 674 F.2d 1211, 1214-15 (8th Cir.1982); White v. United States Pipe & Foundry Co., 646 F.2d 203, 205 n. 3 (5th Cir.1981). See also United States v. Dillon, 346 F.2d 633, 635 (9th Cir.1965) (due process not violated by coercive appointment). We express no opinion on the merits of thirteenth amendment arguments because they are not properly before us. No party presently before the court has standing to present the issues in a justiciable form. See White, 646 F.2d at 205-06
 
 
 [3]
 We do not mean to suggest that Bradshaw has meritless claims. We only point out that members of the bar have apparently made that assessment and fear the consequences of prosecuting claims in which they have no confidence
 
 
 [4]
 See, e.g., Model Code of Professional Responsibility EC 2-16 and EC 2-25:
 EC 2-16. The legal profession cannot remain a viable force in fulfilling its role in our society unless its members receive adequate compensation for services rendered ... Nevertheless, persons unable to pay all or a portion of a reasonable fee should be able to obtain necessary legal services, and lawyers should support and participate in ethical activities designed to achieve that objective.
 * * *
 EC 2-25. Historically, the need for legal services of those unable to pay reasonable fees has been met in part by lawyers who donated their services or accepted court appointments on behalf of such individuals. The basic responsibility for providing legal services for those unable to pay ultimately rests upon the individual lawyer, and personal involvement in the problems of the disadvantaged can be one of the most rewarding experiences in the life of a lawyer. Every lawyer, regardless of professional prominence or professional workload, should find time to participate in serving the disadvantaged. The rendition of free legal services to those unable to pay reasonable fees continues to be an obligation of each lawyer .... Every lawyer should support all proper efforts to meet this need for legal services.
 
 
 [5]
 "It is the duty of an attorney: ... (h) Never to reject, for any consideration personal to himself, the cause of the defenseless or the oppressed." Cal.Bus. & Prof. Code Sec. 6068. See Yarbrough v. Superior Court of Napa County, 150 Cal.App.3d 388, 197 Cal.Rptr. 737 (Cal.App. 1 Dist.1983) (upholding coercive appointment of counsel in state proceedings)