Jose Luis ARROCHA, Plaintiff,

v.

Dennis P. McAULIFFE, Administrator the Panama Canal Commission (In His Official Capacity Only) Defendant.

Civ. A. No. 85–1726.

United States District Court, District of Columbia.

Feb. 11, 1986.

See also, D.C., 609 F.Supp. 231.

Rufus Beatty, Jr., Washington, D.C., for plaintiff.

Michael L. Martinez, Asst. U.S. Atty., Washington, D.C., for defendant.

## MEMORANDUM OPINION

ARTHUR L. BURNETT, Sr., United States Magistrate.

This employment discrimination—retaliation case under Title VII, 42 U.S.C. § 2000e–16 and § 2000e–3, was referred to the undersigned U.S. Magistrate by Order of the Court (Harold Greene, J.) of October 8, 1985 for supervision of pretrial discovery and a formal pretrial conference. The formal pretrial conference was conducted on January 31, 1986 with the Final Pretrial Order being entered on February 7, 1986. Prior to the pretrial conference, counsel for the defendant, on January 23, 1986, filed a Notice of Deposition of four (4) individuals, to be taken February 11 and 12, 1986 in the Panama Canal Commission Administrative Building, Office of the General Counsel, Balboa Heights, Republic of Panama. Defendant's notice advised that these would be depositions taken pursuant to Rules 28 and 32, Fed.R.Civ.P. to be used at the trial of this case. Counsel for defendant advised at the pretrial conference that the purpose was to avoid incurring the expense of bringing the witnesses to Washington, D.C. to testify in person at the trial, now set to commence on February 24, 1986. The Notice invited plaintiff and his counsel to attend the depositions and further stated that if plaintiff's counsel were unable to attend, the defendant would arrange for his participation by having an open telephone line operating between the Office of the General Counsel in Balboa Heights, Republic of Panama and the United States Attorney's Office in Washington, D.C. The Notice indicated that plaintiff's counsel could listen to the deposition in progress, consisting of the direct examination by defendant's counsel, and then counsel for the plaintiff could cross-examine over the open

long-distance telephone line.[1] This arrangement would be made without cost to the plaintiff.[2]

At the pretrial conference counsel for the plaintiff, a participant in the Bar Association of the District of Columbia Young Lawyers *Pro Bono* Program, appointed under 42 U.S.C. § 2000e–5(f), objected to the taking of the four (4) depositions in the Republic of Panama, asserting that neither he nor his client, who is currently unemployed, had the necessary funds for the transportation and subsistence expenses involved in a three (3) or four (4) day trip and stay in the Republic of Panama. He further objected that cross-examination by long distance telephonic questioning, when he could not see the deponents and gauge their reactions, was not an adequate means of cross-examination and substitute for in person cross-examination. He orally moved for a Protective Order to preclude the taking of the *de bene esse* depositions.[3]

After extensive legal research and review of the relevant judicial precedent, the Magistrate concluded that a Protective Order should be granted. In the Final Pretrial Order filed February 7, 1986, the Magistrate stated:

"If the defendant intends to offer the testimony of any of these witnesses at trial, they must be produced here in Washington, D.C. to testify at the trial. Furthermore, they must report to Washington, D.C. at least two (2) days before trial and shall be made available for deposition by counsel for the plaintiff, shall he so desire, prior to trial so that he may effectively cross-examine them at trial."

The following factual and legal analysis, and discussion of that judicial precedent we have been able to locate, are set forth in support of the rulings made.

 While under the Code of Professional Responsibility and the Canons, it is permissible for *pro bono* counsel to advance discovery and related pretrial expenses, or even to absorb these expenses, *see* generally, Model Rule of Professional Conduct 1.8, ABA Formal Opinion 1361 (1976), ABA Formal Opinion 259 (1943), and D.C.Legal Ethics Committee Opinion No 104, April 21, 1981, *pro bono* counsel can not be required to do so.[4] As Chief Judge

---

1. The Notice of Deposition specifically provided: "You are invited to attend these depositions and cross examine each witness. Should you be unable to attend the depositions you are invited to listen to them as they proceed, over the telephone and conduct any cross-examination over the telephone. The United States Attorney's office in Washington will make available to you, at no cost, the use of one of their telephones for this purpose, if you so desire."

2. This ingenuity and potential use of modern technology is to be commended, but for the reasons set forth in this opinion the Magistrate reluctantly concludes that it can not be sanctioned in this case.

3. In the course of counsel's argument, the Magistrate inquired if the defendant could pay the transportation and subsistence expenses for the attendance of plaintiff's counsel at the *de bene esse* depositions, since it was the defendant who desired the depositions, and this would be less expensive than paying for the travel of four (4) witnesses from the Republic of Panama to Washington, D.C. Plaintiff's counsel stated that even were the defendant to pay these expenses, he would object because he could not afford to be away from his Washington, D.C. law practice

for 3–4 days and to neglect his income-generating legal business. Counsel for the defendant would not commit himself without first doing some legal research.

There is a serious question as to whether a court can require a defendant to underwrite a plaintiff's discovery or other pretrial expenses in any civil case, and where that defendant is the United States, problems of sovereign immunity and the existence of appropriated funds by the Congress are matters which must be considered. Our legal research has revealed no pertinent judicial precedent sanctioning such an approach in dealing with a plaintiff's discovery and/or trial preparation expenses in Title VII cases or in other civil litigation against the United States as a defendant.

4. In Opinion No. 104 the District of Columbia Legal Ethics Committee observed:

"The inevitable question, raised by the inquiry is: who pays? The answer to this question under the present Code is one that we reach with some difference, because there are conflicting signals to guide us. DR 5–103(B) of the present Code is explicit in providing that, if a lawyer advances the expenses of litigation, the client must nevertheless remain obligated for them. In the case of indigent representation,

Jack B. Weinstein of the Eastern District of New York observed:

> "The *pro bono* attorney has been appointed by the court to ensure the availability of justice to all who come before us. It cannot be 'violative of law or public policy to give financial aid to a poor suitor who is prosecuting a meritorious cause of action,' *Jahn v. Champagne Lumber Co.*, 157 Fed. 407, 418 (W.D.Wis. 1903)." *Baker v. American Broadcasting Co.*, 585 F.Supp. 291, 294 (E.D.N.Y. 1984):

In this case counsel has represented, and the plaintiff's responses to interrogatories reveal, that plaintiff has been unemployed since August, 1985. Counsel is a young lawyer and has represented that he personally does not have to pay approximately $700.00 for air transportation costs, plus $200.00–$300.00 for hotel and subsistence expenses. Thus, it is readily apparent that requiring *pro bono* counsel to attend the depositions in the Republic of Panama would personally cost him at least $1,000.00. Counsel is contributing his efforts and time without compensation; it would be unfair to imposed the additional financial burden of going to the Republic of

the theoretical obligation of the client is likely to be illusory. There is no express exception for indigents, although some have suggested that lawyers should be *permitted* to assume responsibility for litigation costs when they agree to represent indigents. This Committee and the Board of Governors have so recommended to the Court of Appeals in seeking an amendment to the Code on this subject." (Emphasis in the original).

It is significant to observe that apparently while this Opinion was in preparation the D.C. Court of Appeals did act and modify the ABA version of DR 5–103(B) to drop the proviso concerning the client remaining ultimately liable for such expenses. The District of Columbia version of DR 5–103(B) as amended by the District of Columbia Court of Appeals, April 18, 1980, reads:

"While representing a client in connection with contemplated or pending litigation or administrative proceedings, a lawyer shall not advance or guarantee financial assistance to his or her client, except that a lawyer may pay, advance or guarantee the expenses of litigation or administrative proceedings, including court costs, expenses of investigation, expenses of medical examination, and costs of obtaining and presenting evidence."

Opinion No. 104 continues:

"The practical question now before us is somewhat different. Is a lawyer who is appointed to represent an indigent *obliged* to assume substantial out-of-pocket costs for which he has no chance of reimbursement? Nothing in the Code is explicit in requiring the lawyer to do so. Indeed, EC 5–8, generally discourages lawyers from advancing costs to clients. In our Opinion No. 21 this Committee expressly held that, in the absence of agreement to do so, a lawyer does not have an ethical obligation to advance the costs of litigation, even when the client is of 'modest means' and may not otherwise be able to advance the costs necessary to continue to press a litigation. *See also* Opinion No. 89, permitting withdrawal of representation because of a client's unwillingness to pay costs and fees."

The Committee in Opinion No. 104 then concluded with the following:

"Normally, of course, a lawyer's voluntary acceptance of the representation of an indigent carries with it the understanding that he will advance the costs necessary for adequate representation. Where, however, the representation is not the result of voluntary choice, but of a direction from the court, is there a similar, implicit undertaking? We conclude that there is. When a lawyer accepts an assignment in accordance with his professional responsibility to render such service, his professional duties to his indigent client under DR 6–101 and DR 7–101, as discussed above, oblige him to advance the expenses necessary to competent representation. This duty means that, as a practical matter, the lawyer will have to absorb those expenses whenever there is no mechanism for reimbursing him."

The Opinion further indicates that counsel may be expected to take depositions, submit interrogatories, hire investigators or experts, and engage in other pretrial discovery procedures as may be necessary to render adequate representation. However, in a footnote, the Committee was careful to point out that it did not suggest that a lawyer representing an indigent is obliged to expend all the resources that might be committed if cost were no concern. He may exercise discretion on how far to go, provided he furnishes adequate representation. While the comments in Opinion. No. 104 addressed an inquiry dealing with appointment of lawyers in delinquency and neglect cases in the Family Division of the Superior Court of the District of Columbia, they are equally applicable to counsel appointed under Title VII, 42 U.S.C. 2000e–5(f)(1) for complainants who are unemployed, who may only have temporary employment with low pay, or whose income may be so small as only to provide the necessities of life, pending the adjudication of their unlawful discrimination and/or retaliation claims.

Panama on him.[5] This Magistrate notes from his experience in ruling on discovery issues in numerous Title VII cases that the costs of pretrial discovery may be substantial. Thus, the court should be sensitive to imposing requirements which will discourage young lawyers from accepting *pro bono* appointments in Title VII cases. Furthermore, while counsel for plaintiffs in Title VII cases may be reimbursed for some expenses incurred and receive attorney's fees where the plaintiff ultimately prevails, *see, e.g., Ramos v. Lamm*, 539 F.Supp. 730, 754 (D.Colo.1982); *Baker v. American Broadcasting Co., supra*, 585 F.Supp. at 291,[6] this Magistrate's experience over the past six (6) years in handling Title VII cases is that a substantial number of plaintiffs in Title VII cases which go to trial do not prevail. Nonetheless, *pro bono* counsel must render competent legal representation through a trial and adjudication of the merits. A court must thus exercise a balanced judgment in dealing with pretrial discovery disputes and other pretrial issues and be careful not further to discourage attorneys from accepting *pro bono* cases by requiring such attorneys to bear the often high costs of discovery and pretrial preparation. When the issue is not one of simply pretrial discovery, but the taking of *de bene esse* depositions to be offered as substantive evidence at a Title VII trial, on which the factfinder is to rely to determine the merits, these considerations take on even greater importance. To require *pro bono* counsel to shoulder personally expenses to obtain and preserve testimony to be presented at the Title VII trial for a decision on the merits would, in reality, require private counsel to subsidize the defendant's obtaining and presenting of evidence at the trial of this case. While a plaintiff in a Title VII case has the burden of proof to establish his claims—in this case racial discrimination and retaliation—it would be a remarkable proposition to require plaintiff's counsel to pay personally for the expenses involved to be physically present to perfect the taking of *de bene esse* depositions to be used at the trial to defeat his client's claims, rather than to have the witnesses appear in person, to be subject to the scrutiny of the trial judge, to determine if the personnel actions involved were based on discriminatory motive or intent.

■ But here counsel for the defendant has suggested a potential means of taking the *de bene esse* depositions without impos-

**5.** The perplexing and difficult problems of a court in finding *pro bono* counsel to appoint and the problems experienced by such counsel were recently cogently described in an appellate court decision in the following manner:

"After the remand in *Bradshaw [v. Zoological Society of San Diego*, 662 F.2d 1301 (9th Cir. 1981)] *II*, the district court set about in search of counsel to fulfill the mandate of this court. The district court strove for over 13 months to find an attorney who would volunteer to represent Bradshaw. * * * No one would voluntarily assist in the prosecution of Bradshaw's case.

The district court outlined in its findings of fact the reasons why counsel could not be located to voluntarily assist Bradshaw. Chief among the reasons given by attorneys and organizations contacted was the lack of compensation. Besides the obvious demand on attorney time for the adequate prosecution of a complex employment discrimination case, the costs of discovery were thought prohibitive. Anyone stepping forward would have been responsible to pay for substantial discovery and other costs. The only opportunity for recovery for time and out-of-pocket expenditures would be as a pre-

vailing party under 42 U.S.C. § 2000e–5(k). Attorneys also expressed concern about jeopardizing their malpractice insurance coverage and defending against State Bar disciplinary proceedings. Furthermore, Bradshaw is apparently particularly litigious and is not reluctant to call into question the competency of attorneys who attempt to assist her." *Bradshaw v. United States District Court for the Southern District of California*, 742 F.2d 515, 516 (9th Cir.1984).

The problems alluded to in *Bradshaw* are frequently encountered by this Magistrate in attempting to appoint counsel for complainants in Title VII cases in this court. This Magistrate has also observed in handling discovery disputes and in presiding at settlement conferences that such complainants have not been reluctant to question their counsel's efforts on their behalf, their tactics and strategy, their competency and resolve to handle their cases to conclusion.

**6.** Expenses for travel and lodgings incurred in connection with the taking of depositions may not, however, be taxable as costs. *See, Bitsouni v. Sheraton Hartford Corp.*, 37 Fed.Rules Serv.2d 1248 (D.Conn.1983).

ing expenses on plaintiff's counsel. An opportunity to cross-examine will be afforded. The question is whether it will be adequate with respect to the means to be utilized, and whether counsel can be required to utilize a less desirous, and, perhaps, inferior means of cross-examination, solely because his client is impecunious.[7] The question is whether cross-examination by long distance telephonic questioning without the ability to see the witness and to evaluate the witness' demeanor, facial reactions and expressions can be adequate, when counsel desiring the *de bene esse* deposition is physically present with the witness and has conducted the direct examination in person, and by observation, can detect every nuance and meaning of a witness' response to a question. Such a disparity in the ability of counsel to examine and evaluate the witnesses, in a case in which proof of discriminatory motive and intent may depend on subtle factors concerning demeanor and reaction of witnesses, can not be wisely approved in Title VII litigation. In person cross-examination of alleged discriminating officials or of others with knowledge of the facts involving the *bona fides* of a personnel decision at issue may be outcome determinative in such a case.

█ The Magistrate's extensive research of the issues here presented has disclosed a paucity of judicial precedent dealing with how discovery and related pretrial expenses of *pro bono* counsel in Title VII cases should be provided for and handled.

In seeking to encourage private counsel to accept *pro bono* appointments, the courts must be sensitive to the burdens imposed upon counsel to conduct discovery properly in such cases and to prepare effectively for the trial of such cases on their merits. While seeking to minimize the expenses of discovery for *pro bono* counsel, the court can not lawfully shift these expenses to the defendant prior to a determination of liability. Thus, magistrates and judges must fashion discovery rulings in a manner to enable counsel for impecunious plaintiffs to prepare adequately for trial and to render competent and effective representation as counsel, but at the same time not impose expensive discovery or trial obligations on defendants. In achieving this balance, the ultimate objective is a trial which is fair and just to both parties in a Title VII case. The Magistrate concludes, that if private counsel are to be encouraged to accept *pro bono* appointments and to conduct the necessary pretrial discovery required in Title VII cases and to engage in competent trial preparation, both the Bench and the Bar must give further attention to the issue of pretrial discovery and other related pretrial expenses a lawyer must now frequently absorb in order to meet even a minimal standard of competent legal representation of Title VII complainants. *See Bradshaw v. United States District Court for the South District of California,* 742 F.2d 515 (9th Cir.1984); *Baker v. American Broadcasting Co.,* 585 F.Supp. 291 (E.D.N.Y. 1984).[8] It is hoped that the comments ex-

---

7. While a court may find waiver with reference to *de bene esse* depositions, where there is ample notice and opportunity for opposing counsel to attend the depositions and cross-examine, and there are no facts suggesting economic inability, *see, Jakeway v. Washington Metropolitan Area Transit Authority,* 750 F.2d 1093 (D.C.Cir.1984) ("WMATA's failure to move for protective order, dispite ample notice and opportunity to do so, *see Fed.R.Civ.P. 26(c),* precludes its objection to the introduction at trial of the deposition of Jakeway's physicians taken in Florida"), where counsel has, as in this case objected and moved for a protective order, no waiver can be found, and any *de bene esse* depositions, to be admissible, must be taken in accord with any court order issued.

8. It has been brought to our attention that the Litigation Section of the American Bar Association has created a *Pro Bono* Expense Bank, which will provide funds to cover expenses for pretrial discovery and trial preparation. However, it may be that such funds will not be made available where it is the defendant who desires to take *de bene esse* depositions and the defendant has the financial resources available, as obviously the United States does, to produce the witnesses at trial if their testimony is important enough. Finally it is noted that even where funds are available arrangements for taking *de bene esse* depositions in a foreign country should not be delayed almost to the eve of trial, when such endeavors would interfere with normal final trial preparation.

pressed herein will further promote the development of *pro bono* programs, with adequate funding sources available, so that counsel willing to take Title VII cases, will have access to adequate financial resources other than their own personal funds to render competent and effective legal representation to Title VII plaintiffs.